ORIGINAL

NORTHERN D   OF TEXAS

FILED

JUL  1 2 2012

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| JOSEPHINE HILL, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-00764-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

Plaintiff Josephine Hill ("Hill"), appearing *pro se*, filed this action pursuant to Sections

405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision

of the Commissioner of Social Security denying her claim for a period of disability, disability

insurance benefits under Title II, and supplemental security income ("SSI") benefits under Title

XVI of the Social Security Act ("SSA").  In December 2009, Hill protectively applied for social

security benefits, alleging that her disability began on June 23, 2008.[1]  (Transcript ("Tr.") 66–67,

145–56.)  Her applications were denied initially and on reconsideration, and Hill requested a

hearing before an administrative law judge ("ALJ").  (Tr. 12, 66–77, 84–101, 105.)  On February

---

[1] Hill previously filed applications for disability under Titles II and XVI in 2006.  (Tr. 12.)  However, the ALJ
declined to reopen any prior application, finding there was no cause to do so.  (Tr. 12.)

16, 2011, the ALJ held a hearing on her Title II and Title XVI applications and, on April 1, 2011, issued a decision finding that Hill was not disabled. (Tr. 12–21, 27–65.) On August 22, 2011, the Appeals Council denied Hill's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4–6.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382a(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20

2

C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999).  At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairment.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In her brief, Hill states, in essence, the following: (1) she suffers from shoulder pain on a daily basis that prevents her from socializing with others; (2) she has daily back pain; (3) her knees hurt when she "sit[s] or stand[s] for too long[,] [l]ike steady sitting and standing over two hour[s] straight;" (4) her medical records support her complaints of pain in her shoulder, back, and knees; and (5) she suffers depression because of pain and because she cannot support herself financially.  (Plaintiff's Brief ("Pl.'s Br.") at 2–7.)  Hill also attaches the following documents to her brief: (1) a copy of portions of the ALJ's decision to show "an outline of the relevant medical evidence" and (2) a copy of a physician's note indicating Hill was diagnosed with psychotic disorder on September 26, 2011.[2]  (Pl.'s Br. at 8–14.)

While Hill's argument is not especially clear, after a careful reading of her brief and the attached documents, her complaints seem to center on the ALJ's consideration of her alleged medical conditions in determining her residual functional capacity ("RFC").  The Court finds that Hill presents the following issues on appeal:

1.  Whether the ALJ's RFC assessment is supported by substantial evidence;[3] and

2.  Whether the copy of the physician's note submitted by Hill to the Court constitutes "new and material" evidence that requires the case to be remanded.

---

[2] The Court notes that this document, although very difficult to read, appears to indicate that Hill was treated and diagnosed on September 26, 2011.  However, the document was not actually signed by a physician until November 14, 2011.

[3] The Commissioner points to two issues on appeal: (1) whether substantial evidence supports the RFC assessment and (2) whether the Commissioner applied the correct legal standards in making the RFC assessment.  (Defendant's Brief ("Def.'s Br.") at 1.)  From what the Court can deduce from Hill's brief, however, her complaint with the RFC assessment seems to be that the ALJ did not properly consider all of her alleged medical conditions in determining her RFC.  (Pl.'s Br. at 2–7, 15.)  The Court can find no argument in Hill's brief as to whether the ALJ used the correct legal standard in determining Hill's RFC.

## IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his April 1, 2011 decision, stated that Hill had engaged in substantial gainful activity for most of 2009, where she earned $12,000 from working as a babysitter, but had engaged in no other substantial gainful activity since June 23, 2008, the alleged onset date for her disability. (Tr. 13.)  The ALJ found that Hill was insured for disability benefits under Title II from June 23, 2008 through the date of his decision, and, according to a Disability Report completed by the Social Security Administration's Fort Worth Field Office, Hill remains insured through December 31, 2013. (Tr. 12, 172.)  The ALJ further found that Hill had the following "severe" impairments: (1) degenerative joint disease with a history of right shoulder separation and surgery; (2) obesity; (3) a history of back pain complaints with minimal degenerative disk disease; and (4) depression. (Tr. 13.)  The ALJ also found that Hill had the impairments of menstrual irregularities, fibroids, anemia, and allergies but that these impairments were not severe as they would not impair Hill's ability to work. (Tr. 16.)  Next, the ALJ held that none of Hill's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 13–17.)  As to Hill's RFC, the ALJ stated:

> The claimant has retained the residual functional capacity to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of work activity as follows: lifting/carrying up to 10 pounds occasionally; standing/walking for 2 hours and sitting for 6 hours in an 8-hour day with normal breaks and the ability to alternate sitting and standing to alleviate pain or discomfort; limited to occasional overhead reaching with the dominant right arm; and limited to detailed but not complex instructions and decisions. . . . After a thorough review of the evidence in its entirety, I conclude that the objective evidence fails to establish that the claimant has any significant restrictions in her residual functional capacity to perform work consistent with the above . . . limitations, despite her subjective complaints.

(Tr. 19–20.)  The ALJ found that Hill was capable of sedentary work.[4]  The ALJ further opined, based on his RFC assessment, that Hill was able to perform her past relevant work as a data entry clerk, and, thus, she was not disabled.  (Tr. 20–21.)

## V.   DISCUSSION

### A.  RFC Assessment

Hill appears to claim, in essence, that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly consider all of her alleged impairments in assessing her RFC.  (See Pl.'s Br. at 2–7, 15.)  Hill's argument seems to center primarily around the ALJ's consideration of her subjective complaints.[5]  (See Pl.'s Br. at 2–7, 15.)  Regarding Hill's subjective complaints, the ALJ found that "the claimant's testimony concerning her condition was not credible or reasonably supported by the objective medical evidence or inferences therefrom, to the extent that she has alleged the inability to engage in any work activity since June 23, 2008."  (Tr. 17.)  The crux of Hill's argument appears to be that, if the ALJ had properly weighed her subjective complaints, the ALJ would not have found her capable of any work and, consequently, found her to be disabled.  (Pl.'s Br. at 2–7, 15.)

---

[4] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

[5] While Hill's argument is far from clear, her brief primarily contains descriptions of her subjective complaints of pain and depression. (See Pl.'s Br. at 2–6, 15.) Additionally, the record contains a handwritten note in which Hill states: "Trust me I know my pain." (Tr. 3.) This Court's understanding of Hill's argument is further supported by her request for review of the ALJ's decision, where Hill states: "I Josephine Hill can tell whomever the pain that I am going through and feeling. No one else can do that, but Josephine Hill." (Tr. 7.)

RFC is what an individual can still do despite her limitations.[6] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[7] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation,

---

[6] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[7] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

However, an ALJ is not required to give subjective evidence precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (citations omitted). Rather, the ALJ's evaluation of the credibility of an individual's complaints of pain is used to resolve conflicts between the subjective evidence and the medical evidence. *Id.* The record is clear that the ALJ considered a number of factors, including: (1) findings from medical examinations, (2) information and observations provided by Hill's treating physicians and third parties, and (3) Hill's own report of her daily activities in determining that her subjective complaints were not credible to the extent she claimed. (Tr. 13–20.)

First, the ALJ evaluated Hill's medical examinations and treatment history. He found that Hill had a history of dysfunctional uterine bleeding and associated anemia and that the anemia was resolved through a hysterectomy in September 2008. (Tr. 13; *see* Tr. 252–70, 274–76, 281–94.) The ALJ noted that Hill was also on medication for anxiety and depression and that, in June 2009, she saw a new doctor and complained of depression with anxiety, sleep problems, and tearfulness. (Tr. 13; *see* Tr. 272) The ALJ noted that, at the June 2009 visit, Hill was prescribed Zoloft, and her dosage was increased in July 2009 when her symptoms persisted. (Tr. 13; *see* Tr. 271–72.) The ALJ also observed that the medication to treat Hill's depression

8

was changed to Celexa in December 2009 and that Hill also complained of a four-year history of blurred vision. (Tr. 13–14; *see* Tr. 249.) The ALJ also noted, however, that an ophthalmological evaluation conducted in April 2010 indicated that she had 20/20-1 visual acuity in the right eye and 20/20 visual acuity in the left eye without correction.   (Tr. 14; *see* Tr. 326–27.) Additionally, the ALJ recognized that, although Hill reported in August 2010 that Zoloft was more helpful for her depression than Celexa but that she planned to refill the Celexa, the record failed to indicate any subsequent prescriptions for either drug after December 2009. (Tr. 15; *see* Tr. 249, 347, 323–25, 379–85, 392–96.)

The ALJ also noted that in August 2009, Hill went to a family health clinic and complained of a three-week history of back and shoulder pain and that diagnostic imaging of the shoulder showed a "'somewhat wide' acromioclavicular joint without evidence of a definite shoulder separation." (Tr. 13; *see* Tr. 251–52, 280–81.)  Hill was given a muscle relaxant and referred for physical therapy.  (*Id.*)  The ALJ acknowledged that in January 2010, Hill complained of continued stiffness in her right shoulder, as well as lower back and right knee pain, but that diagnostic imaging indicated only minimal degenerative changes in the lumbar spine. (Tr. 14; *see* Tr. 245, 247–48, 280, 395–96.)  The ALJ further noted that in January 2011 Hill once again reported back and shoulder pain and was provided less than ten days of refills of narcotic pain medicine and a muscle relaxant. (Tr. 16; *see* Tr. 373–74)

Next, the ALJ indicated that in November 2010 Hill returned to her primary treating source complaining of, *inter alia*, mood problems and knee pain. (Tr. 16; *see* Tr. 390, 392.)  The ALJ noted that an examination of her knees revealed no erythema, swelling, or crepitus and that Hill also demonstrated a full range of motion bilaterally. (Tr. 16; *see* Tr. 392.)  The ALJ also

noted that diagnostic imaging of her left knee was negative, while imaging of her right knee indicated mild degenerative spurring in the right patella. (Tr. 16; *see* Tr. 390.)

The ALJ also discussed a March 2010 consultative internal medicine evaluation completed by Stella Nwankwo, M.D. ("Nwankwo"). (Tr. 14; *see* Tr. 303–07.) The ALJ noted that during the evaluation, Hill (1) complained of right knee pain resulting from a fall in 2003, back pain, and right shoulder pain; (2) indicated she had undergone surgery on her right shoulder in 2004; and (3) stated that using a heating pad and medication improved all of her pain. (Tr. 14; *see* Tr. 303–04.)   The ALJ observed that Dr. Nwankwo reported that Hill was calm and cooperative, could sit, stand, and move about, had an appropriate mood, and was able to use her dominant right hand to write and dress and undress herself.  (Tr. 14; *see* Tr. 305–06.)   In addition, the ALJ noted that Dr. Nwankwo's report indicated the following:

> [T]he claimant ambulated without an assistive device, her gait and station were normal, she performed heel and tandem walking without difficulty, although she complained of right knee pain with toe walking, and she hopped without difficulty but could not effectively squat. Further, her hand strength was good bilaterally, she had good lumbosacral flexion extension and side bending despite pain complaints, she had no muscle spasms, straight leg raising was negative bilaterally, and she demonstrated a full range of motion in all areas. The claimant also had tenderness with palpation of the right shoulder but no spasms, atrophy or synovitis and the range of motion in her right shoulder was good despite her pain complaints. She was further noted to have crepitus and tenderness to palpation of the right knee without edema, heat, redness, or obvious effusion, and she demonstrated full extension of both knees with only mildly decreased flexion in the right knee due to pain. The examiner also reported that the claimant stated that she had decreased sensation in the right upper and lower extremities, although she was otherwise neurologically intact.

(Tr. 14–15; *see* Tr. 305–06.)   The ALJ noted that an x-ray of her right knee revealed no significant abnormalities. (Tr. 15; *see* Tr. 307.)

In addition, the ALJ considered an August 2010 formal mental status evaluation performed by Randall Rattan, Ph.D., ABPP ("Rattan") in which Dr. Rattan noted that Hill had "no signs of a formal thought disorder, no evidence of bizarre thought content, no

observable signs of perceptual abnormalities, and a positive mood with a slightly restricted range of emotional expression which was consistent with the topic of conversation." (Tr. 15; *see* Tr. 346–65.)   Dr. Rattan found that Hill had good long-term memory but poor intermediate memory and had difficulty with serial calculations, serial subtractions, and spelling, which Dr. Rattan interpreted to mean that Hill had below average attention and concentration. (Tr. 15; *see* Tr. 349.)   The ALJ, however, posited that Hill's difficulty with mathematical calculations and spelling could also be a result of her limited education as Hill reported that she had only completed her education through the seventh or eighth grade.  (Tr. 15; *see* Pl.'s Br. at 6–7; Tr. 37, 178, 201, 229, 304, 346.)   The ALJ noted that Dr. Rattan found the severity of Hill's symptoms was moderate and that she had no deficits in judgment, fair insight, overall good affective functioning, and a "healthy, if not stylish, appearance." (Tr. 15; *see* Tr. 348–50.)   The ALJ also acknowledged that Dr. Rattan deemed Hill able to manage benefits despite Hill's reported deficits in performing mathematical calculations and below average attention and concentration. (Tr. 15; *see* Tr. 349–50.)   The ALJ noted that Dr. Rattan found that Hill's appearance and overall functioning were not considered to be "supportive of the presence of psychotic features." (Tr. 15; *see* Tr. 349.)

After evaluating Hill's treatment history, the ALJ next considered Hill's statements regarding her symptoms.  The ALJ evaluated Hill's reports regarding her daily activities, the location, duration, frequency, and intensity of pain or other symptoms, any precipitating or aggravating factors, the effectiveness of the medication she was prescribed as well as any other treatments prescribed or measures used to relieve pain or other symptoms. (Tr. 17–19.) *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ noted that Hill alleged that her pain restricted her from performing virtually every activity except hearing and speaking. (Tr.

17; *see* Tr. 34, 36, 40–58, 193–99, 208, 212–18, 233, 237–38.)  The ALJ found that a report from Edmond Blocker ("Blocker"), Hill's boyfriend, generally corroborated Hill's alleged symptoms but "appear[ed] to reflect excessive symptoms when compared to the objective medical evidence of record."  (Tr. 17–18; *see* Tr. 220–26.)   The ALJ reported that Hill indicated that she could drive and shop, watch television and read, entertain visitors such as her daughter, attend church, and climb the stairs to her second-story apartment despite claims that climbing stairs caused pain and swelling in her knees.  (Tr. 18; *see* Tr. 36–37, 51–55, 57, 193–97, 213–16, 221–24.)  Additionally, the ALJ noted that the record showed that the most recent prescription of anti-depressants was in December 2009; that Hill received limited quantities of pain pills and muscle relaxants in December 2010 and January 2011; and that medications were reported to be effective with no significant side effects.  (Tr. 18–19; *see* Tr. 373–74, 390.)   Additionally, the ALJ reported that Hill indicated her symptoms were alleviated by use of a heating pad.  (Tr. 19; *see* Tr. 303.)

Ultimately, the ALJ found that the medical evidence showed the Hill's impairments were not totally disabling.  (Tr. 13–20.)  There is substantial evidence in the record to support the ALJ's choice to credit the medical records over Hill's subjective testimony as well as the statement by Blocker.   Hill's medical records indicate that there were only slight irregularities in her shoulder and back.  (Tr. 245, 247–48, 251–52, 280–81, 373–74, 390, 395–96.)  Additionally, Hill's depression was considered of mild severity, and she was considered capable of good overall functioning.  (Tr. 348–50.)

Despite these positive findings, the ALJ nevertheless imposed significant functional limitations on Hill, including: (1) limiting her to sedentary work with the additional requirement that she have the freedom to alternate positions as needed for comfort and sit for

around six hours and stand/walk for around two hours in an eight-hour work day; (2) providing for no more than occasional overhead reaching with her right arm; (3) limiting her to lifting/carrying no more than 10 pounds occasionally and less than 10 pounds frequently; and (4) restricting her to work that involved detailed, but not complex, work instructions and decision-making. (Tr. 19–20.) The ALJ also, as indicated above, properly considered Hill's positive response to the medication she was prescribed to control chronic pain and recognized that any pain she experienced was alleviated by medication or use of a heating pad. (Tr. 17–18; *see* Tr. 303, 373–74, 390.) Conditions that can be well-controlled with medication are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). Moreover, for pain itself to be considered disabling, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983)). Finally, the ALJ noted that the record indicated that since December 2009 Hill had not received medication to treat her depression. (Tr. 15, 18; *see* Tr. 249, 347, 323–25, 379–85, 392–96.)

It is apparent that the ALJ considered the record as a whole and concluded that Hill was capable of performing sustained work activity. (Tr. 13–20.) The ALJ did not simply disregard Hill's impairments but, rather, placed significant limitations on her ability to work based upon Hill's complaint and impairments. (Tr. 19–20.) An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted). Because substantial evidence supports the ALJ's RFC determination, the Court concludes that the ALJ did not err and remand is not required.

## B. New and Material Evidence

The next issue is whether the copy of the September 26, 2011 physician's note submitted by Hill with her brief constitutes "new and material evidence" that requires the Court to remand this case. The physician's note appears to diagnose Hill with a psychotic disorder, which contradicts the ALJ's finding that Hill did not suffer from a psychotic disorder. (Tr. 13, 17; *see* Pl.'s Br. at 13.)

"When new evidence becomes available after the Secretary's decision and there is reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 483, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

In this case, even assuming that the September 26, 2011 physician's note is new, the Court concludes that the note is not material because it is merely a conclusory assertion that Hill suffers from a psychotic disorder and, thus, cannot work. (*See* Pl.'s Br. at 13.) The note is

14

illegibly signed by a physician whose name the Court cannot deduce. Furthermore, the note contains only six lines of handwritten text that state: "Ms. Hill was seen in my clinic and diagnosed with Psychotic Disorder. At the time of the visit she presented symptoms that were preventing her from functioning at work." (*Id.*) The physician, however, provides no medical support for this diagnosis nor explains why Hill would be unable to work due to the alleged impairment. Statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence may be disregarded. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237. Additionally, conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Because the physician's note only contains a brief and conclusory diagnosis of psychotic disorder that allegedly prevents Hill from returning to work, the note is not material and remand is not required.[8]

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed

---

[8] In addition, the note is directly contradicted by evidence contained in the record, including diagnostic evidence, that indicates Hill does not suffer from a psychotic disorder. (Pl.'s Br. at 13; Tr. 349.)

findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until July 26, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 12, 2012.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE